IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAKE BIELEFELDT and SIMON FIRESTONE on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GRO INTELLIGENCE, INC.,<br><br>Defendant. | CASE NO. |

**CLASS ACTION COMPLAINT FOR (1) VIOLATION OF WARN ACT 29 U.S.C. § 2101, *et seq.*, (2) VIOLATION OF NEW YORK WARN ACT, NYLL § 860 *et seq.* (3) VIOLATION OF NEW YORK STATE WAGE LAWS**

Plaintiffs Jake Bielefeldt and Simon Firestone ("Plaintiffs"), on behalf of themselves and a putative class of similarly situated former employees, by way of this Class Action Complaint against Gro Intelligence, Inc. ("Defendant"), allege as follows:

**NATURE OF THE ACTION**

1. Defendant supplies global agricultural and climate data, provides analysis and builds predictive models for its clients.

2. Starting on February 1, 2024 and continuing through March 1 2024, Defendant abruptly terminated over 90 of its employees, about two thirds of its staff, over that 30 day period.

3. Plaintiffs bring this action individually and on behalf of other similarly situated former employees who worked for Defendant and were terminated without cause, as part of, or as the foreseeable result of, a mass layoff or plant closing ordered by Defendant on March 1, 2024 and within 30 days of that date and who were not provided 60 days advance written notice of their

terminations, as required by the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. § 2101 *et seq.*, and 90 days advance written notice, as required by the New York Worker Adjustment and Retraining Notification Act ("NY WARN Act"), New York Labor Law ("NYLL") § 860 *et seq.* (cumulatively, the "WARN Acts").

4. Plaintiffs and all similarly situated employees seek to recover up to 60 days wages and benefits, pursuant to 29 U.S.C. § 2104 and NYLL § 860-g (2), from Defendant.

5. Plaintiffs and those similarly situated have not received wage statements in compliance with the New York Wage Theft Prevention Act ("WTPA"), NYLL § 195(3), and are owed damages of up to $250 per day, per employee, up to a maximum of $5,000 per employee, plus fines and other penalties.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1334, 1367 and 29 U.S.C. § 2104(a)(5).

7. Venue is proper in this District pursuant to 29 U.S.C. § 2104(a)(5).

## THE PARTIES

### *Plaintiffs*

8. Plaintiff Jake Bielefeldt was employed by Defendant as a senior software engineer who reported to and received assignments from Defendant's facility at 505 Park Avenue, 12th Floor, New York, New York (the "Facility") until he was terminated from his employment on or about February 1, 2024.

9. Plaintiff Bielefeldt is a resident of the state of Missouri.

10. Plaintiff Bielefeldt was terminated without cause.

11. Plaintiff Bielefeldt did not receive at least 60 days' written notice of his termination.

12. Plaintiff Firestone was employed by Defendant as an economist who worked at, reported to and received assignments from Defendant's facility at 505 Park Avenue, 12th Floor, New York, New York (the "Facility") until he was terminated from his employment on or about March 1, 2024.

13. Plaintiff Firestone is a resident of the state of New York.

14. Plaintiff Firestone was terminated without cause.

15. Plaintiff Firestone did not receive at least 60 days' written notice of his termination.

16. In addition to Plaintiffs, Defendant employed other similarly situated individuals worked at, reported to, or received assignments from the Facility.

17. On March 1, 2024 and within 30 days of that date, other employees who worked at, reported to, or received assignments from the Facility were terminated from their employment by Defendant, effective immediately.

18. None of its employees terminated from February 1 to March 1, 2024, including Plaintiffs, received written notice of their terminations.

19. Plaintiffs estimate that over 90 similarly situated full-time employees were terminated within 30 days of March 1, 2024.

20. As their employer, Defendant was obligated to provide contemporaneous paystubs or pay statements to Plaintiffs and the other similarly situated employees during their employment, which it failed to do on several occasions in 2023 and in January and February 2024.

21. Plaintiffs and the other similarly situated employees did not receive wage statements and paystubs that contain the information required by NYLL § 195-3 and § 195-6.

*<u>Defendant</u>*

22. Upon information and belief and at all relevant times, Defendant is Delaware corporation with its main office located at 505 Park Avenue, 12th Floor, New York, New York.

23. Upon information and belief and at all relevant times, Defendant conducted business in this district.

24. Defendant made the decision to terminate the employment of Plaintiffs and the other similarly situated former employees without 60 days' notice.

## FEDERAL WARN ACT CLASS ALLEGATIONS, 29 U.S.C. § 2104

25. Plaintiffs bring this Claim for Relief for violation of 29 U.S.C. § 2101 *et seq*., on behalf of themselves and all other similarly situated former employees, pursuant to 29 U.S.C. § 2104(a)(5) and Fed. R. Civ P. 23(a), who worked or were based at, or reported to and received assignments from the Facility and were terminated without cause on or about March 1, 2024 and within 30 days of that date, as the reasonably foreseeable consequence of the mass layoff and/or plant closing ordered by Defendant on or about March 1, 2024 and within 30 days of that date, and who are affected employees, within the meaning of 29 U.S.C. § 2101(a)(5) (the "WARN Class").

26. The persons in the WARN Class identified above ("WARN Class Members") are so numerous that joinder of all members is impracticable.  The precise number and identity of such persons is information within the sole control of Defendant.

27. On information and belief, the rate of pay and benefits that were being paid by Defendant to each WARN Class Member at the time of his/her termination is contained in the books and records of Defendant.

28. Common questions of law and fact exist as to members of the WARN Class, including, but not limited to, the following:

4

(a) whether the members of the WARN Class were employees of Defendant who worked or were based at, or reported to and received assignments from, the Facility;

(b) whether Defendant unlawfully terminated the employment of the members of the WARN Class without cause on their part and without giving them 60 days' advance written notice in violation of the WARN Act; and

(c) whether Defendant unlawfully failed to pay the WARN Class members 60 days' wages and benefits as required by the WARN Act.

29. Plaintiffs' claims are typical of those of the WARN Class. Plaintiffs, like other WARN Class members, worked at, reported to or received assignments from the Facility, and were terminated without cause on or about March 1, 2024 and within 30 days of that date, due to the mass layoff and/or plant closing ordered by Defendant.

30. Plaintiffs will fairly and adequately protect the interests of the WARN Class. Plaintiffs have retained counsel competent and experienced in complex class actions, including the WARN Acts and employment litigation.

31. On or about March 1, 2024 and within 30 days of that date, Defendant terminated the employment of Plaintiffs and similarly situated employees, as part of mass layoff or a plant closing as defined by 29 U.S.C. § 2101(a)(2), (3), for which the affected employees were entitled to receive 60 days' advance written notice under the WARN Act. Class certification of these claims is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the WARN Class predominate over any questions affecting only individual members of the WARN Class, and because a class action superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of WARN Act litigation, where

individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant, and damages suffered by individual WARN Class members are small compared to the expense and burden of individual prosecution of this litigation.

32. Concentrating all the potential litigation concerning the WARN Act rights of the members of the Class in this Court will obviate the need for unduly duplicative litigation that might result in inconsistent judgments, will conserve the judicial resources and the resources of the parties and is the most efficient means of resolving the WARN Act rights of all the members of the WARN Class.

33. Plaintiffs intend to send notice to all members of the WARN Class to the extent required by Rule 23.

## NEW YORK WARN ACT ALLEGATIONS

34. Plaintiffs bring the Second Claim for Relief for violation of NYLL § 860 *et seq.*, individually and on behalf of a class of similarly situated persons pursuant to NYLL § 860-G (7) and Federal Rules of Civil Procedure, Rule 23(a) and (b), who worked at, reported to, or received assignments from the Facility and were terminated without cause on or about March 1, 2024, and within 30 days of that date, or were terminated without cause as the result of the mass layoff and/or plant closing ordered by Defendant on or about March 1, 2024, and who are affected employees, within the meaning of NYLL § 860-A (1), (4) and (6) (the "NY WARN Class").

35. The persons in the NY WARN Class identified above ("NY WARN Class Members") are so numerous that joinder of all members is impracticable. The identity and number of such persons is within the sole control of Defendant.

36. On information and belief, Defendant employed at least 50 employees within New York State as of the time notice was first required to be given. On information and belief, Defendant terminated at least 25 full-time employees, within 30 days of March 1, 2024 from the New York Facility.

37. On information and belief, the rate of pay and benefits that were being paid by Defendant to each NY WARN Class Member at the time of his/her termination is contained in the books and records of the Defendant.

38. Common questions of law and fact exist as to members of the NY WARN Class, including, but not limited to, the following:

(a) whether the members of the NY WARN Class were employees of the Defendant who worked in a covered site of employment of Defendant;

(b) whether Defendant unlawfully terminated the employment of the members of the NY WARN Class without cause on their part and without giving them 90 days' advance written notice in violation of the NY WARN Act; and

(c) whether Defendant unlawfully failed to pay the NY WARN Class members 60 days' wages and benefits as required by the New York WARN Act.

39. Plaintiffs' claims are typical of those of the NY WARN Class. Plaintiffs, like other NY WARN Class members, worked at, reported to, or received assignments from Defendant's New York Facility and was terminated on or about March 1, 2024 or within 30 days of that date, due to the mass layoff or plant closing ordered by Defendant.

40. Plaintiffs will fairly and adequately protect the interests of the NY WARN Class. Plaintiffs have retained counsel competent and experienced in complex class actions on behalf of employees, including the WARN Act, state laws similar to WARN, and employment litigation.

41. Class certification of these Claims is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the NY WARN Class predominate over any

questions affecting only individual members of the NY WARN Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of NY WARN Class Act litigation, where individual Plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant, and damages suffered by individual NY WARN Class members are small compared to the expense and burden of individual prosecution of this litigation.

42.     Concentrating all the potential litigation concerning the NY WARN Act rights of the members of the Class in this Court will obviate the need for unduly duplicative litigation that might result in inconsistent judgments, will conserve the judicial resources and the resources of the parties and is the most efficient means of resolving the NY WARN Act rights of all the members of the Class.

43.     Plaintiffs intend to send notice to all members of the NY WARN Class to the extent required by Rule 23.

## **NEW YORK WTPA CLASS ALLEGATIONS, NYLL § 195(3)**

44.     Plaintiffs bring a claim for relief for violation of the New York Wage Theft Protection Act, NYLL § 195(3), for themselves and on behalf of all other similarly situated former employees, pursuant to Fed. R. Civ P. 23(a), who worked at, reported to or received assignments from the Facility until they were terminated between February 1 and March 1, 2024, and who were not furnished compliant pay statements with their pay checks for each and every semi-monthly period in the final four months of their employment, but rather provided fragmentary information that Defendant expressly stated "was not intended to be used as an "official" pay statement (the "WTPA Class").

45. The persons in the Wage Statement Class identified above ("WTPA Class Members") are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, the facts on which the calculation of that number can be based are presently within the sole control of Defendant.

46. On information and belief, the identity of the members of the class and the recent residence address of each of the WTPA Class Members is contained in the books and records of Defendant.

47. Common questions of law and fact exist as to members of the WTPA Class, including, but not limited to, the following:

　　a. whether the members of the WTPA Class were employees who were paid for their work by Defendant;

　　b. whether Defendant unlawfully failed to furnish the members of the WTPA Class a conforming wage statement when paying in them during various weeks prior to their terminations, as required by the WTPA; and

　　c. whether Defendant is liable to pay the WTPA Class Members a mandatory penalty of $250 per day up to $5,000 for having failed to provide them their pay statement.

48. Plaintiffs and those similarly situated were harmed by Defendant's failure to provide them accurate, timely, reliable statements of their wages, PTO, and benefits. First, it impinged on their ability to know whether they were properly compensated and to advocate for the receipt of proper pay in their compensation. Second, it kept them in the dark as to the taxes that they might have paid or may be found delinquent for not paying, for they are unable to reconcile inconsistencies between their W-2 forms and actual pay deposits without true statements.

49. These WTPA Plaintiffs' claims are typical of those of the WARN Class. The WTPA Plaintiffs, like other WTPA Class members, were paid by Defendant, were provided wage statements by Defendant up until their final compensation and benefits were deposited into their accounts on or about March 1, 2024 by Defendant, and were not furnished an accompanying wage statement or pay stub then or within 20 days thereafter.

50. Plaintiffs will fairly and adequately protect the interests of the WTPA Class. Plaintiffs have retained counsel competent and experienced in complex class actions, including the wage and hour and other employment litigation.

51. Class certification of these claims is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the WTPA Class predominate over any questions affecting only individual members of the WTPA Class, and because a class action superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of WTPA litigation, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant, and damages suffered by individual WTPA Class members are small compared to the expense and burden of individual prosecution of this litigation.

52. Concentrating all the potential litigation concerning the WTPA rights of the members of the Class in this Court will obviate the need for unduly duplicative litigation that might result in inconsistent judgments, will conserve the judicial resources and the resources of the parties and is the most efficient means of resolving the WTPA Act rights of all the members of the WTPA Class.

53. Plaintiffs intend to send notice to all members of the WTPA Class to the extent required by Rule 23.

**FIRST CLAIM FOR RELIEF**
<u>Violation of the Federal WARN Act</u>

54. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

55. At all relevant times, Defendant employed more than 100 employees who in the aggregate worked at least 4,000 hours per week, exclusive of hours of overtime, within the United States.

56. At all relevant times, Defendant was an "employer," as that term is defined in 29 U.S.C. § 2101 (a)(1) and 20 C.F.R. § 639.(3)(a)(1) and continued to operate as a business until it decided to order the mass layoff or plant closing at the Facility.

57. On or about March 1, 2024 and within 30 days of that date, Defendant ordered a mass layoff and/or plant closing at the Facility, as that term is defined by 29 U.S.C. § 210l(a)(2)(3).

58. The mass layoff or plant closing at the Facility resulted in "employment losses," as that term is defined by 29 U.S.C. §2101(a)(3) for at least fifty of Defendant's full-time employees as well as thirty-three percent of Defendant's workforce at the Facility.

59. Plaintiffs and the Class Members were terminated by Defendant without cause on their part, as part of or as the reasonably foreseeable consequence of the mass layoff or plant closing ordered by Defendant at the Facility.

60. Plaintiffs and the Class Members are "affected employees" of Defendant, within the meaning of 29 U.S.C. § 2101(a)(5).

61. Defendant was required by the WARN Act to give Plaintiffs and the Class Members at least 60 days advance written notice of their terminations.

11

62. Defendant failed to give Plaintiffs and the Class members written notice that complied with the requirements of the WARN Act.

63. Plaintiffs and each of the Class Members are "aggrieved employees" of the Defendant as that term is defined in 29 U.S.C. § 2104(a)(7).

64. Defendant failed to pay Plaintiffs and each of the Class Members their respective wages, salary, commissions, bonuses, health and life insurance premiums, accrued holiday pay and accrued vacation for 60 days following their respective terminations, and failed to provide employee benefits including health insurance, for 60 days from and after the dates of their respective terminations.

## SECOND CLAIM FOR RELIEF
### Violation of the New York WARN Act

65. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

60. At all relevant times, Defendant was an individual or private business entity defined as "employer" under the NY WARN Act and continued to operate as a business until they decided to order a mass layoff or plant closing at the New York Facility as defined by § 860-A(3),(4).

61. On or about March 1, 2024 and within 30 days of that date, Defendant ordered mass layoff and/or plant closing at its New York Facility impacting more than 25 full-time3 employees as defined by § 860-a (4),(6).

62. Plaintiffs and the New York Class Members suffered a termination of employment as defined by § 860-a (2) having been terminated by Defendant without cause on their part.

63. Defendant was required by the NY WARN Act to give the Plaintiffs and New York Class Members at least 90 days' advance written notice of their terminations pursuant to § 860-B.

64. Defendant failed to give the Plaintiffs and New York Class Members written notice that complied with the requirements of the NY WARN Act.

65. Defendant failed to pay the Plaintiffs and each of the New York Class Members their respective wages, salary, commissions, bonuses, health and life insurance premiums, accrued holiday pay and accrued vacation for 60 days following their respective terminations, and benefits including health and life insurance coverage, for 60 days, that would have been covered and paid under the then-applicable employee benefit plans had that coverage continued for that period. § 860-g (2).

### THIRD CLAIM FOR RELIEF
### Violation of NYLL § 195

66. Plaintiffs reallege and incorporate by reference all allegations in all proceeding paragraphs.

67. Defendant has failed to issue final pay stubs or wage statements, including benefits such 401k funding contributions and matching amounts in violation of the WTPA.

68. Instead of providing compliant pay statements with their pay checks for each and every semi-monthly period in the final four months of their employment, Defendant provided incomplete information that lacked one or more of the following components required by NYLL § 195(3): the "dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages." Defendant expressly advised on several occasions that these were "not intended to be used as an official" pay statement.

69. Defendant failed to provide along a written statement or paystub that complied with the requirements of the NYLL § 195(3) when it paid the WTPA Class Members their final compensation on or about March 1, 2024.

70. Each WTPA Class Member is entitled to mandatory damages under NYLL § 198(1-d), as the penalty for failure to provide wage statements as required under NYLL § 195(3).

71. Each Wage Statement Class Member is entitled to recover $5,000 in damages under NYLL §§ 198(1-d), due to Defendant's failure to furnish the WTPA Class's wage statements within 20 days after March 1, 2024, or thereafter.

72. Plaintiffs will seek to certify a subclass of the similarly situated individuals to the extent necessary.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs, on behalf of themselves and all other similarly situated former employees, pray for the following relief as against Defendant:

A. Certification of this action as a class action;

B. Designation of Plaintiffs as the WARN Class, NY WARN and WTPA Class Representatives;

C. Appointment of the undersigned attorneys as Class Counsel for all class members;

D. A judgment against Defendant in favor of Plaintiffs and the other similarly situated former employees equal to the sum of: their unpaid wages, as determined in accordance with the WARN Act, 29 U.S.C. § 2104 (a)(1)(A) and NYLL § 860-g (1)(a);

E. A judgment against Defendant in favor of the WTPA Plaintiffs and each member of the WTPA Class in the amount of $5,000, as required by NYLL § 198(1-d);

F.  Plaintiffs' reasonable attorneys' fees and the costs and disbursements that the Plaintiffs incurred in prosecuting this action, as authorized by the WARN Act, 29 U.S.C. § 2104(a)(6), NYLL § 860-g (7); and NYLL § 198 (1-d); and

G.  Such other and further relief as this Court may deem just and proper.

DATED:  April 1, 2024

/s/  *Jack. A. Raisner*
Jack A. Raisner
René S. Roupinian
**RAISNER ROUPINIAN LLP**
270 Madison Avenue, Suite 1801
New York, New York 10016
Telephone: (212) 221-1747
Fax:     (212) 221-1747
Email: rsr@raisnerroupinian.com
Email: jar@raisnerroupinian.com

*Attorneys for Plaintiffs and all others similarly situated*