UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAKE BIELEFELDT, et al.,

                                    Plaintiffs,

            -v-

GRO INTELLIGENCE, INC.,

                                    Defendant.

24-CV-2472 (JGK) (RFT)

**REPORT AND RECOMMENDATION**

**TO THE HONORABLE JOHN G. KOELTL, United States District Judge:**

**INTRODUCTION**

Plaintiffs Jake Bielefeldt and Simon Firestone filed a putative class action lawsuit against Defendant Gro Intelligence, Inc. to recover damages and costs under the federal Worker Adjustment and Retraining Notification Act ("WARN Act"), the New York Worker Adjustment and Retraining Notification Act ("NY WARN Act"), and the New York Wage Theft Protection Act ("WTPA"), as incorporated in the New York Labor Law ("NYLL"). (*See* ECF 3, Compl. ¶¶ 3-5.) Plaintiffs allege that Defendant did not provide adequate notice under the WARN Act and NY WARN Act prior to Plaintiffs' terminations and that they did not receive wage statements that complied with the WTPA. (*See id.*) Your Honor granted a default judgment to Bielefeldt and Firestone against Defendant. (*See* ECF 40, Default J. Order.) Your Honor then referred the case to me for an inquest on damages. (*See* ECF 41, Order of Ref.) Bielefeldt and Firestone seek: (a) $81,185.44 under the WARN Act and NY WARN Act; (b) $10,000 under the WTPA; (c) $165,677.00 in attorneys' fees; and (d) $2,574.07 in costs. (*See* ECF 47, Suppl. Statement of Damages at 4-5.)

For the reasons set forth below, I respectfully recommend that judgment be entered against Defendants in favor of Bielefeldt and Firestone in the amount of $82,400.42, consisting of:

1. $64,975.50 in WARN Act damages ($38,320.62 for Firestone and $26,654.88 for Bielefeldt).

2. $18,727.25 in reasonable attorneys' fees; and

3. $2,574.07 in costs.

**BACKGROUND**

## I.    Factual Background

Unless otherwise indicated, I draw the facts from the Complaint (ECF 3) and the Proposed Findings of Fact and Conclusions of Law ("Proposed Findings") (ECF 43). Given Defendant's default, I accept as true all well-pleaded factual allegations in the Complaint, except as to damages, and the well-supported factual statements in the Proposed Findings. *See City of New York v. Mickalis Pawn Shop, L.L.C.*, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an ancient common law axiom that a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint."); *Lopez v. Emerald Staffing Inc.*, No. 18-CV-2788 (SLC), 2020 WL 915821, at *1 n.1 (S.D.N.Y. Feb. 26, 2020) (relying on and accepting as true facts from the plaintiffs' proposed findings of fact and conclusions of law, the plaintiffs' declarations, and the plaintiffs' complaint and citing *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)).[1]

---

[1]    Unless otherwise indicated, this report and recommendation omits internal quotation marks, citations, and alterations in quoted text.

Bielefeldt and Firestone were employed by Defendant. (*See* ECF 3, Compl. ¶¶ 8, 12.) Bielefeldt and Firestone both "reported and received assignments from" Defendant's facility at 505 Park Avenue, New York, New York (the "Manhattan Facility"). (*See id.*) Defendant is a Delaware corporation that supplies global agricultural and climate change data, provides analysis, and builds protective models for its clients. (*See id*. ¶ 1.) Defendant has its principal place of business at the Manhattan Facility. (*See id.* ¶¶ 8, 12, 22.) Defendant had at least 100 employees working at least 4,000 hours a week in aggregate, exclusive of overtime, at the Manhattan Facility. (*See id.* ¶ 55.)

On several occasions in 2023 and in January and February 2024, Defendant failed to provide contemporaneous pay stubs. (*See id.* ¶ 20.)

Between February 1, 2024 and March 1, 2024, as a foreseeable result of a mass layoff or the Manhattan Facility's closing, Defendant terminated Bielefeldt and Firestone and approximately 90 other employees without cause. (*See id*. ¶¶ 2-3.) Bielefeldt and Firestone did not receive written notice of their terminations, which were effective immediately. (*See id.* ¶¶ 1, 15.) The terminations affected approximately two-thirds of Defendant's staff. (*See id.* ¶ 2.) In the 60 days following the employees' terminations, Defendant failed to provide any post-termination pay and paid no wages, salary, commissions, bonuses, health and life insurance premiums, accrued holiday pay, or accrued vacation pay. (*See id.* ¶ 64.)[2]

---

[2]    The Complaint duplicates the numbering for paragraphs 60 through 65. This reference is to the first paragraph 64.

## II.    Procedural Background

Bielefeldt and Firestone filed a putative class action lawsuit on April 1, 2024 challenging

their terminations and the terminations of over 90 similarly situated employees. (*See id.* ¶¶ 10,

14, 19.)[3] Plaintiffs alleged that Defendant violated: (1) the WARN Act by failing to provide them

with at least 60 days' written notice before their terminations; (2) the NY WARN Act by failing

to provide them with at least 90 days' written notice before their terminations and failing to

provide 60 days of wages and benefits post termination; and (3) the WTPA by failing to provide

proper pay stubs and other information regarding wages and benefits in the four months prior

to their termination. (*See id*. ¶¶ 3-5, 44.)

On April 5, 2024, Defendant's registered agent was served with the summons and

Complaint. (*See* ECF 6, Certificate of Serv.) Counsel appeared on behalf of Defendant (*see* ECF 7;

ECF 8), but on June 11, 2024, before Defendant filed its answer and before any discovery had

been exchanged, counsel filed a motion to withdraw from the case for non-payment of fees and

difficulties in communicating with Defendant. (*See* ECF 11, Mot. To Withdraw.) Your Honor

granted the motion to withdraw and gave Defendant until July 29, 2024 to retain new counsel.

(*See* ECF 19, Order.) New counsel failed to file a notice of appearance for Defendant as

required, and Your Honor issued an order directing Plaintiffs to move for a default judgment by

order to show cause. (*See* ECF 22, Order.)

The Clerk's Certificate of Default was entered on September 17, 2024. (*See* ECF 27,

Clerk's Certificate of Default.) Plaintiffs filed a proposed order to show cause on October 9,

---

[3]        Due to a filing error, the Complaint was refiled on April 2, 2024. (*See* ECF 3, Compl.)

2024 (ECF 36). Your Honor directed Defendant to respond in writing by October 29, 2024. (*See* ECF 38, Order.) Defendant failed to respond, and Your Honor entered a default judgment order on November 7, 2024 in favor of Bielefeldt and Firestone. (*See* ECF 40, Default J. Order.)[4]

Your Honor referred the case to me to conduct an inquest after default and damages hearing. (*See* ECF 41, Order of Ref.) On November 12, 2024, I issued a scheduling order directing Plaintiffs to file their Proposed Findings by December 12, 2024. (*See* ECF 42, Order.) Plaintiffs timely filed their Proposed Findings, supported by declarations from Plaintiffs and their counsel. (*See* ECF 43, Proposed Findings; ECF 44-1, Declaration of Simon Firestone ("Firestone Decl."); ECF 44-2, Declaration of Jake Bielefeldt ("Bielefeldt Decl.").) On October 6, 2025, I issued an order to supplement, requesting certain additional information from Plaintiffs. (*See* ECF 46, Order.) Plaintiffs timely filed the requested information. (*See* ECF 47, Suppl. Statement of Damages.)

I have conducted an inquest based on the Proposed Findings, declarations, and supplemental statement of damages, which provide a sufficient basis to make a damages calculation without the need to conduct a live hearing. *See Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 189 (2d Cir. 2015) (holding that Fed. R. Civ. P. 55(b)(2), which governs the determination of damages following default, permits a hearing but does not require one); *De Lage Landen Fin. Servs., Inc. v. Universal Wilde, Inc.*, No.

---

[4]    Plaintiffs never sought class certification, and the default judgment was entered in favor of Bielefeldt and Firestone only. Accordingly, the inquest on damages will proceed with regard to those Plaintiffs only. *See Telford v. Ideal Mortg. Bankers, LTD.*, No. 09-CV-5518 (JS) (AKT), 2010 WL 3924790, at *4 (E.D.N.Y. Aug. 17, 2010), *report and recommendation adopted*, 2010 WL 3909313 (E.D.N.Y. Sept. 27, 2010).

19-CV-1371 (AT) (SDA), 2019 WL 4195441, at *3 n.2 (S.D.N.Y. Aug. 15, 2019) (finding that an inquest hearing was not required because the plaintiff's sworn declarations provided a sufficient basis for calculating damages), *report and recommendation adopted*, 2019 WL 4194574 (S.D.N.Y. Sept. 3, 2019).

## LEGAL STANDARDS

### I.    Obtaining a Default Judgment

A party seeking default judgment must follow the steps set out in Rule 55 of the Federal Rules of Civil Procedure. *See Burns v. Scott*, 635 F. Supp. 3d 258, 271 (S.D.N.Y. 2022) (citing *Bricklayers,* 779 F.3d at 186-87); Fed. R. Civ. P. 55. Under Rule 55(a), when a "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Afterwards, under Rule 55(b), should the party still fail to appear or move to set aside the default, the Court may enter a default judgment. *See* Fed. R. Civ. P. 55(b)(2).

In considering whether to enter a default judgment, courts are guided by the factors of: "(1) whether the default was willful; (2) whether ignoring the default would prejudice the opposing party; and (3) whether the defaulting party has presented a meritorious defense.*" J&J Sports Prods. Inc. v. 1400 Forest Ave. Rest. Corp.*, No. 13-CV-4299 (FB) (VMS), 2014 WL 4467774, at *4 (E.D.N.Y. Sept. 10, 2014) (citing *Swarna v. Al-awadi*, 622 F.3d 123, 142 (2d Cir. 2010)). Courts must be cautious in awarding default judgment because it is an extreme remedy that should only be granted as a last resort. *See Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981).

II.     **Determining Liability and Damages**

A defendant's default concedes "all well-pleaded allegations of liability." *Rovio Ent., Ltd.*

*v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 545 (S.D.N.Y. 2015). However, the Court must then

determine if the allegations accepted as true establish liability for the defendants as a matter of

law. *See Gesualdi v. Quadrozzi Equip. Leasing Corp.*, 629 F. App'x 111, 113 (2d Cir. 2015). On a

motion for a default judgment, "the burden is on the plaintiff to establish an entitlement to

recovery, and a failure to plead sufficient facts may require the denial of the motion." *J&J*

*Sports*, 2014 WL 4467774, at *5. If the Court finds that the well-pleaded allegations

demonstrate liability, the Court then analyzes "whether Plaintiff has provided adequate support

for [his requested] relief." *Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 119 (S.D.N.Y.

2008). If, however, the Court finds that the complaint fails to state a claim on which relief may

be granted, the Court may not award damages, "even if the post-default inquest submissions

supply the missing information." *Perez v. 50 Food Corp.,* No. 17-CV-7837 (AT) (BCM), 2019 WL

7403983, at *4 (S.D.N.Y. Dec. 4, 2019), *report and recommendation adopted*, 2020 WL 30344

(S.D.N.Y. Jan. 2, 2020).

Once liability is established, the Court conducts an inquiry on the amount of damages.

*See Am. Jewish Comm. v. Berman*, No. 15-CV-5983 (LAK) (JLC), 2016 WL 3365313, at *3 (S.D.N.Y.

June 15, 2016) (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir.

1999)), *report and recommendation adopted*, 2016 WL 4532201 (S.D.N.Y. Aug. 29, 2016). The

plaintiff "bears the burden of establishing [its] entitlement to recovery and thus must

substantiate [its] claim with evidence to prove the extent of damages." *Dunn v. Advanced Credit*

*Recovery Inc.*, No. 11-CV-4023 (PAE) (JLC), 2012 WL 676350, at *2 (S.D.N.Y. Mar. 1, 2012) (citing

*Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)), *report and recommendation adopted*, 2012 WL 1114335 (S.D.N.Y. Apr. 3, 2012). The evidence the plaintiff submits must be admissible. *See Poulos v. City of New York*, No. 14-CV-3023 (LTS) (BCM), 2018 WL 3750508, at *2 (S.D.N.Y. July 13, 2018), *report and recommendation adopted*, 2018 WL 3745661 (S.D.N.Y. Aug. 6, 2018); *see also House v. Kent Worldwide Mach. Works, Inc*., 359 F. App'x 206, 207 (2d Cir. 2010) ("[D]amages must be based on admissible evidence."). If the documents the plaintiff has submitted provide a "sufficient basis from which to evaluate the fairness of" the requested damages, the Court need not conduct an evidentiary hearing. *Fustok v. ContiCommodity Servs. Inc*., 873 F.2d 38, 40 (2d Cir. 1989); *see also Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (explaining that a court may calculate damages based on declarations and documentary evidence "as long as [the court has] ensured that there [is] a basis for the damages specified in the default judgment").

## DISCUSSION

### I.    Default Judgment

In accordance with the two-step process set forth in Rule 55, the Clerk of Court entered the Certificate of Default, and Your Honor entered an order of default judgment. (*See* ECF 14, Clerk's Certificate of Default; ECF 40, Default J. Order) On the question whether the default was willful, the Court may infer from Defendant's failure to submit any reply to the Proposed Findings, after having been served, that the default was willful. *See Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc*., No. 07-CV-6865 (LTS) (GWG), 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (concluding that failing to respond to a complaint and subsequent motion for default

judgment "indicate willful conduct"). On the issue of prejudice, delaying entry of

a default judgment might prejudice Plaintiffs, as there are no additional steps available to

secure relief in this Court. *See Gogo Apparel, Inc. v. Daruk Imps., Inc.,* No. 19-CV-5701 (LGS)

(SDA), 2020 WL 4274793, at *7 (S.D.N.Y. June 11, 2020) (finding the prejudice element was met

because without the entry of a default judgment, the plaintiffs would be unable to recover for

the claims adequately set forth in the complaint), *report and recommendation adopted*, 2020

WL 4271694 (S.D.N.Y. July 23, 2020). As to a potentially meritorious defense, Defendant has

presented no defense at all. Thus, the requirements of Rule 55 are satisfied, and the relevant

factors weigh in Plaintiffs' favor. I conclude that entry of a default judgment is proper in this

case.

## II.    Liability

### A.    Jurisdiction and Venue

This Court has subject matter jurisdiction over Plaintiffs' federal WARN Act claim

pursuant to 28 U.S.C. § 1331, which grants district courts original jurisdiction over all civil

actions arising under the U.S. Constitution, laws, or treatises; this Court has supplemental

jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a), which grants district

courts jurisdiction over all other claims arising from the same case or controversy as one over

which the court has original jurisdiction.

This Court has personal jurisdiction over corporations that have their principal place of

business in New York. *See* N.Y. C.P.L.R. § 301; *see also Sonera Holding B.V. v. Cukurova Holding

A.S.*, 750 F.3d 221, 225 (2d Cir. 2014) (holding that "the place of incorporation and the principal

place of business" are the "paradigm bases" for determining that a corporation is "at home"

and therefore "amenable to all-purpose jurisdiction") (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). Because Defendant has its principal place of business in New York, it is subject to the personal jurisdiction of this Court.

As a prerequisite to exercising personal jurisdiction over a defendant, the "procedural requirement of service of summons must be satisfied." *Reilly v. Plot Com.*, No. 15-CV-5118 (PAE) (BCM), 2016 WL 6837895, at *3 (S.D.N.Y. Oct. 31, 2016), *report and recommendation adopted*, 2016 U.S. Dist. LEXIS 160884 (S.D.N.Y. Nov. 21, 2016). "Where the defendant has defaulted, the plaintiff must establish adequate service in order to obtain a default judgment." *Id.*; *see also Lliviganay v. Cipriani 110 LLC*, No. 09-CV-0737 (LAK), 2009 WL 1044606, at *1 (S.D.N.Y. Apr. 14, 2009) (holding that lack of proof of proper service "is an independent obstacle to a default judgment"). The record reflects adequate service of process of all required documents. (*See* ECF 6, Certificate of Serv. (summons and Complaint).) Thus. the Court may exercise personal jurisdiction over Defendant.

The general venue provision states that a civil action may be brought in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located"; or "(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred"; or "(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). Here, venue is proper because the Defendant's principal place of business is in Manhattan, and so Defendant is a resident of this District.

B.    Liability Under the WARN Act and the NY WARN Act

To state a claim under the WARN Act, Plaintiffs must plead that (1) they were employed by an employer (2) who failed to provide at least 60 days' advance notice of (3) a plant closing or a mass layoff (4) which resulted in an employment loss. *See Warshun v. New York Cmty. Bancorp, Inc.,* 957 F. Supp. 2d 259, 267 (E.D.N.Y. 2013)*; see also Telford v. Ideal Mortg. Bankers, LTD.,* No. 09-CV-5518 (JS) (AKT), 2010 WL 3924790, at *3 (E.D.N.Y. Aug. 17, 2010)*, report and recommendation adopted,* 2010 WL 3909313 (E.D.N.Y. Sept. 27, 2010). The WARN Act defines an employer as a business enterprise that employs 100 or more employees who in the aggregate work at least 4,000 hours per week (exclusive of overtime). *See* 29 U.S.C. § 2101(a)(1)(B).

The 60-day advance notice period has been interpreted by this Court to mean workdays within the 60-day period as opposed to calendar days. *See 1199 SEIU United Healthcare Workers E. v. S. Bronx Mental Health Council, Inc.,* No. 13-CV-2768 (JGK) (JCF), 2013 WL 6003731, at *5 (S.D.N.Y. Nov. 13, 2013)*, report and recommendation adopted,* 2013 WL 6244716 (S.D.N.Y. Dec. 3, 2013). As relevant here, a plant closing is defined as a permanent or temporary shutdown of a single site of employment that results in an employment loss at the single site of employment during any 30-day period for 50 or more employees, excluding any part-time employees. *See* 29 U.S.C. § 2101(a)(2). An employment loss is an employment termination, excluding for-cause termination, voluntary departure, and retirement. 29 U.S.C. § 2101(a)(6).

The NY WARN Act "largely mirrors the federal WARN Act" but contains stricter requirements. *1199 SEIU,* 2013 WL 6003731, at *2. Therefore, "wherever there is liability under

the federal WARN Act, there is necessarily liability under the N.Y. WARN Act." *Id.* Under the NY

WARN Act, an employer is a business enterprise that employs at least 50 employees. *See* NYLL

§ 860-a(3). As relevant here, a plant closing is defined as the termination of at least 25 full-time

employees during any 30-day period as a result of the permanent or temporary shutdown of a

single site of employment, or one or more facilities or operating units within a single site of

employment. *See* NYLL § 860-a(6). Under the NY WARN Act, the employer is required to give at

least 90 days' notice before a mass layoff, relocation, or employment loss. *See* NYLL § 860-b(1).

Notice must include the elements required by the federal WARN Act. *See* NYLL § 860-b(2). The

NY WARN Act similarly defines an employment loss as an employment termination, excluding

for-cause termination, voluntary departure, and retirement. *See* NYLL § 860-a(2)(a).

The Complaint alleges that Plaintiffs were employed by Defendant, a business enterprise

with 100 full-time employees working at least 4,000 hours a week in the aggregate. (*See* ECF 3,

Compl. ¶¶ 8, 12, 55.) Because of Defendant's default, these allegations are deemed to be true,

and so Defendant meets the definition of an employer under the federal WARN Act and the NY

WARN Act. *See* 29 U.S.C. § 2101(a)(1); NYLL § 860-a(3). The Complaint further alleges that

Defendant terminated over 90 of its employees – which is over 33 percent of its workforce who

reported to or received assignments from the Manhattan Facility – between February 1, 2024

and March 1, 2024, without cause and without any notice. (*See* ECF 3, Compl. ¶¶ 2-3, 16-19.)

Because of Defendant's default, these allegations are deemed to be true, and Defendant

therefore engaged in a plant closing as defined by the federal WARN Act and the NY WARN Act.

*See* 29 U.S.C. § 2101(a)(2); NYLL § 860-a(6). And the Complaint alleges that Plaintiffs lost their

employment with Defendant, without cause, during the plant closing. (*See* ECF 3, Compl. ¶¶ 3,

8, 10, 12, 14.) Because of Defendant's default, these allegations are deemed to be true, and so Plaintiffs' loss of work qualifies as an employment loss under the federal WARN Act and the NY Warn Act. *See* 29 U.S.C. § 2101(a)(6); NYLL § 860-a(2). Accordingly, I respectfully recommend that Your Honor find that Defendant is liable under both the federal WARN Act and the NY WARN Act.

    C.    <u>Liability Under the WTPA</u>

The WTPA requires an employer to furnish the employee with a statement detailing the calculations of regular and overtime pay for the pay period, as well as information on deductions and minimum wage allowances. *See* NYLL § 195(3). An employee will be entitled to recover damages of $250 for each workday for which the employer failed to provide the required wage statement, up to a maximum of $5,000, along with costs and reasonable attorneys' fees. *See* NYLL § 198(1-d).

However, as a threshold issue, a WTPA plaintiff must demonstrate that he has Article III standing to pursue his WTPA claims. *See Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 305 (2d Cir. 2024). A plaintiff "cannot rely on technical violations of the Labor Law but must allege actual injuries suffered as a result of the alleged . . . wage statement violations." *Id.*; *see also Castillo v. Isakov*, No. 22-CV-6888 (LJL) (GS), 2024 WL 5323851, at *9 (S.D.N.Y. Dec. 27, 2024), *report and recommendation adopted*, 2025 WL 89048 (S.D.N.Y. Jan. 14, 2025). A WTPA plaintiff must show "some causal connection between the lack of accurate notices and the downstream harm" that the statute seeks to prevent, which is "wage theft." *Guthrie*, 113 F.4th at 307-08. To do so, the plaintiff must demonstrate that he "plausibly would have avoided some actual harm or obtained some actual benefit" if accurate wage notices had been provided, which would

establish a concrete injury in fact sufficient to confer Article III standing to seek statutory damages under the WTPA. *See id.* at 308. The employee "cannot . . . rely on speculation and conjecture" to establish the required downstream harm, and must instead articulate a "plausible theory as to how he was injured by the [defendant's] failure to provide the required documents." *Id.* at 309.

The Second Circuit in *Guthrie* recognized that a plaintiff may have suffered an injury in fact sufficient to establish standing under the WTPA when "inaccurate or noncompliant notices prevented the employee from obtaining full payment of wages in a timely fashion." 113 F.4th at 309. And Courts in this District have found that plaintiffs had standing under the WTPA when they established that the defendants' "failure to provide them with any wage statements or wage notices served to keep them uninformed so that they did not have proper information to contest the lack of proper wages." *Ortega v. Frozen Deli & Grocery Inc.*, No. 24-CV-1231 (JLR) (SLC), 2024 WL 4751732, at *9 (S.D.N.Y. Oct. 22, 2024), *report and recommendation adopted*, 2024 WL 4859055 (S.D.N.Y. Nov. 21, 2024). "A plaintiff-employee who has plausibly shown that defective notices led him or her to lose wages has such a concrete interest and is not simply policing legal infractions in the abstract." *Brathwaite v. Martini Collections Inc.,* No. 22-CV-4929 (DEH) (GWG), 2025 WL 99108, at *7 (S.D.N.Y. Jan. 14, 2025), *report and recommendation adopted,* 2025 WL 448040 (S.D.N.Y. Feb. 10, 2025).

Plaintiffs allege that in the final four months of their employment, Defendant failed to provide the required pay statements and instead provided "fragmentary information that Defendant expressly stated was not intended to be used as an official pay statement." (ECF 3 Compl. ¶ 44; ECF 43, Proposed Findings ¶ 13.) "If an employer fails to keep such records, the

plaintiff may meet his burden" to show unpaid wages "solely through his own recollection." *Pineda v. Masonry Constr., Inc.*, 831 F. Supp. 2d 666, 674 (S.D.N.Y. 2011); *see also Gamero v. Koodo Sushi Corp.,* 272 F. Supp. 3d 481, 497-98 (S.D.N.Y. 2017); *Kuebel v. Black & Decker Inc.,* 643 F.3d 352, 362 (2d Cir. 2011). Plaintiffs' allegations, which are taken as true because of the default, are sufficient to support a claim for violation of the WTPA.

As to standing, Plaintiffs list two ways they were harmed by Defendant's failure to provide the required wage statements: being hindered in "their ability to know whether they were properly compensated and to advocate for the receipt of proper pay in their compensation" (ECF 3, Compl. ¶ 48); and being "kept . . . in the dark as to the taxes that they might have paid or may be found delinquent for not paying, for they are unable to reconcile inconsistencies between their W-2 forms and actual pay deposits without true statements" (*id.*). Neither of these harms is sufficient to confer standing on Plaintiffs under the WTPA. Neither Plaintiff suggests that he suffered a loss of wages due to the failure to provide complete wage statements: both Firestone and Bielefeldt state that they were uncertain about whether they were properly compensated and unable to reconcile inconsistencies between their W-2 forms and pay deposits. (*See* ECF 44-1, Firestone Decl. ¶¶ 13-14; *see* ECF 44-2, Bielefeldt Decl. ¶ 11.) But "confusion and uncertainty about" financial matters raise only "hypothetical, speculative concerns" that are "insufficient to establish standing in a suit for damages." *Kola v. Forster & Garbus LLP*, No. 19-CV-10496 (CS), 2021 WL 4135153, at *6 (S.D.N.Y. Sept. 10, 2021). Plaintiffs have not alleged that the "defective notices led [them] to lose wages," which would provide the requisite "concrete interest" as opposed to a "policing" of "legal infractions in the abstract." *Brathwaite,* 2025 WL 99108, at *7. Additionally, Firestone

states that he believes that Defendant failed to pay him for accrued paid time off when he was

terminated, but he does not assert that the failure to compensate him for accrued paid time off

was due to inaccurate pay stubs as opposed to Defendant's failure to comply with the

provisions of the federal WARN Act or the NY WARN Act. (*See* ECF 44-1, Firestone Decl. ¶¶ 13-

14.)

I respectfully recommend that Your Honor deny Plaintiffs' request for damages under

the WTPA due to lack of standing.

## III.    Damages

A.    WARN Act Damages

Both the federal WARN Act and the NY WARN Act "provide the same formula for

calculating damages." *1199 SEIU*, 2013 WL 6003731, at *4. A plaintiff may recover under only

one of the two statutes and not under both for the same conduct. *See id.* ("[T]he N.Y. WARN

Act states that an employer's liability shall be reduced by any liability paid by the employer

under any applicable federal law governing notification of mass layoffs, plant closings, or

relocations . . . ."). Accordingly, I calculate Plaintiffs' damages under the federal WARN Act,

which provides for damages for, as relevant here, back pay for workdays within a 60-day

period, at a rate of compensation not less than the higher of "(i) the average regular rate

received by such employee during the last 3 years of the employee's employment; or(ii) the

final regular rate received by such employee," 29 U.S.C. § 2104(a)(1)(A), plus "benefits under an

employee benefit plan . . . including the cost of medical expenses incurred during the

employment loss which would have been covered under an employee benefit plan if the employment loss had not occurred," *id.* § 2104(a)(1)(B). [5]

Bielefeldt originally sought $33,904.11 in federal and NY WARN Act damages, consisting of $27,123.29 for unpaid wages, based on an annual salary of $165,000, and $6,780.82 in lost benefits. (*See* ECF 37-7, Statement of Damages at 1; ECF 43, Proposed Findings ¶ 42; ECF 44-2, Bielefeldt Decl. ¶ 5.) Firestone originally sought $62,101.68 in federal and NY WARN Act damages, consisting of $36,164.38 in unpaid wages, based on an annual salary of $220,000, and $9,041.10 in benefits, and $6,896.20 in unpaid accrued paid time off ("PTO"), although those amounts total only $52,101.68. (*See* ECF 37-7, Statement of Damages at 1; ECF 43, Proposed Findings ¶ 42; ECF 44-1, Firestone Decl. ¶¶ 6, 14.) [6]

In addition to the arithmetical error in computing Firestone's damages, there were several problems with Plaintiffs' damages calculations:

- Plaintiffs did not adequately explain the basis for their calculation of unpaid wages for Firestone of $36,164.38 and for Bielefeldt of $27,123.29. (*See* ECF 37-7, Statement of Damages.)

- It was unclear for which benefits Plaintiffs are seeking compensation. Nor did Plaintiffs provide any explanation for their basis for valuing their unpaid benefits at 25 percent of their unpaid wages for the relevant period.

- Plaintiffs' counsel did not provide a basis for Firestone's claim of unpaid PTO damages. Firestone states Defendant did not pay him the accrued and unused PTO he had remaining

---

[5]     Back pay for each employee is calculated "per work day within the violation period." *1199 SEIU,* 2013 WL 6003731, at *5. Individual damages for employees such as Plaintiffs who worked longer than four months are calculated by "multiplying [the employee's] average daily wage by the number of work days during the applicable violation period." *Id.* at *6.

[6]     Plaintiffs appear to have calculated their backpay originally by multiplying their annual salaries by 60/365 (approximately 16.4%) to determine the amount of salary they would have received during a 60-day period. Plaintiffs appear to have calculated their benefits originally by multiplying their lost wages by one-fourth.

when terminated: $6,896.20. (*See* ECF 44-1, Firestone Decl. ¶ 14.) Firestone cites the "Check Preview" provided by Defendant in lieu of a complete wage statement, which does not reflect any accrued vacation days. (*See* ECF 37-7, Statement of Damages; ECF 44-1, Firestone Decl. Ex. C, Check Preview.) Bielefeldt's paycheck shows that he had accrued $6,980.82 in PTO as of November 3, 2023, yet Bielefeldt did not request damages for accrued PTO, stating that he was paid through February 1, 2024. (*See* ECF 44-2, Bielefeldt Decl. ¶ 12; *id.* Ex. C, Paystub.)

In the Supplemental Statement of Damages, Firestone provided a revised calculation leading to federal and NY WARN Act damages of $48,695.44, consisting of: $36,666.00 in wages for the 60-day violation period, based on the check preview (*see* ECF 44-1, Firestone Decl. Ex. C, Check Preview); $5,133.24 in damages for employee benefits (employer contributions for health, dental, and vision insurance and for his 401(k) account) for the 60-day violation period, estimated at 14% of unpaid wages during the violation period; and $6,896.20 in accrued PTO. (*See* ECF 47, Suppl. Statement of Damages ¶ 5.) Firestone clarifies that his accrued time off is based on his wage statement from March 2024 and Defendant's PTO policy, which states that employees are entitled to all accrued and unused PTO at the time of termination. (*See* ECF 47-1, Supplement Ex. 1, Employee Earnings Record at 2; ECF 44-1, Ex. B, Gro Intelligence (US) Paid Time Off Policy.) I do not see where in the check preview Bielefeldt finds the $36,666.00 figure or the $6,896.20 accrued PTO figure. My calculation leads to WARN Act backpay for Firestone of $35,538.72.[7]

---

[7]    Firestone's backpay may be calculated using the check preview, which states that Firestone's hourly rate was $105.77. (*See* ECF 44-1, Firestone Decl. Ex. C, Check Preview.) Multiplying the hourly rate by 42 workdays in the 60-day period violation period and eight hours in each workday leads to unpaid wages for Firestone of $35,538.72. *See 1199 SEIU,* 2013 WL 6003731 at *6 (calculating back pay by multiplying the average daily wage by the number of workdays during the violation period); 29 C.F.R. § 541.602(a) (explaining that salaried employees receive a predetermined amount each pay period not subject to reductions).

Bielefeldt provided a revised calculation leading to federal and NY WARN Act damages of $32,450.00, consisting of: $27,500.00 in wages for the 60-day violation period, based on a prior wage statement; and $4,950.00 in damages for employee benefits (employer contributions for health, dental, and vision insurance and 401(k) contributions) for the 60-day violation period, estimated at 18% of unpaid wages during the violation period. (*See* ECF 47, Suppl. Statement of Damages ¶ 7.) I do not see where in the wage statement Bielefeldt finds the $27,500.00 backpay figure. My calculation leads to backpay for Bielefeldt of $26,654.88.[8]

As to unpaid benefits, Plaintiffs reduced the percentage of their wages they used to estimate their damages from 25% to 14% of unpaid wages for Firestone and to 18% of unpaid wages for Bielefeldt, stating that the original 25% multiplier was premised on their original intention of seeking class certification. (*See id.* ¶ 3.)[9] Plaintiffs note that their inability to provide precise figures for their lost benefits is due to Defendant's closure and that Plaintiffs' estimated benefits damages are "consistent with the reported average cost of family employer-sponsored hea[l]th insurance coverage in New York state of $27,188 per year ($4,469 per 60 days)." (*Id.* ¶ 2.)

---

[8]    Bielefeldt's wage statement indicates that his hourly rate was $79.33, and he worked eight hours a day. (*See* ECF 44-2, Bielefeldt Decl. Ex. C, Paystub.) Multiplying the hourly rate by 42 workdays in the 60-day violation period and eight hours in each workday leads to unpaid wages for Bielefeldt of $26,654.88. *See 1199 SEIU,* 2013 WL 6003731 at *6 (calculating back pay by multiplying the average daily wage by the number of workdays during the violation period); 29 C.F.R. § 541.602(a) (explaining that salaried employees receive a predetermined amount each pay period not subject to reductions).

[9]    Plaintiffs' supplemental statement of damages assigns both percentages to the other individual. As explained in the two previous paragraphs, Firestone's requested benefits damages are 14% of his requested unpaid wages ($5,133.24/$36,666.00) and the figure is 18% for Bielefeldt ($4,950/$27,500.00).

Plaintiffs have provided no WARN Act caselaw using their proposed method to calculate damages for lost benefits. Nor have I located any, and so I return to first principles and cases interpreting similar statutes. Plaintiffs bear the burden to establish their lost benefits damages, and "Defendants' silence does not alter this burden." *Mugavero v. Arms Acres, Inc.,* 680 F. Supp. 2d 544, 581-83 (S.D.N.Y. 2010) (granting the Title VII defendants' post-trial motion to reduce the plaintiff's fringe benefits damages award because the plaintiff did not provide sufficient evidence to provide a reasonable basis for the jury's higher award). To meet that burden, Plaintiffs must submit evidence; they may not rely on speculation. *See id.* (reducing the plaintiff's claimed lost fringe benefits in a wrongful termination case by 75 percent, where neither party introduced documentary evidence at trial of the value of those benefits); *see also Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers, Loc. Union No. 71 v. Lovejoy Metals, Inc.,* 495 F. Supp. 3d 174, 188 (W.D.N.Y. 2020) (awarding the plaintiffs a default judgment against the defendants in a case under ERISA and the LMRA but declining to award damages to the plaintiffs for the employer's failure to make benefits contributions where the plaintiffs failed to provide evidence that the unpaid contributions were unambiguously owed to the labor-management trust funds at issue in the litigation). It seems likely that Plaintiffs were damaged by the loss of benefits during the violation period, but in the absence of any concrete evidence as to the value of those benefits, I respectfully recommend that Your Honor decline to award the requested damages for lost health insurance benefits.

Additionally, Firestone requests damages for accrued and unused PTO. (*See* ECF 47, Suppl. Statement of Damages ¶ 8.) As a salaried employee, Firestone earned 20 PTO days per year, or approximately 3.29 PTO days for each 60-day period. (*See id.* ¶ 8; ECF 44-1, Ex. B, Gro

Intelligence (US) Paid Time Off Policy.) Firestone earned an hourly rate of $105.77 for each 8-hour workday, and therefore Firestone's accrued PTO for the 60-day notice period was $2,781.90.[10] I find no basis for the remaining $4,114.30 that Firestone requests for accrued and unused PTO.

Based on the foregoing analysis, Plaintiffs have adequately proved WARN Act damages of $64,975.50 ($38,320.62 for Firestone and $26,654.88 for Bielefeldt).

B.     Damages Under the WTPA

In the event that Your Honor disagrees with my conclusion that Plaintiffs lack standing under the WTPA, I include a damages calculation under that statute. Damages for failure to furnish an employee with a statement compliant with the WTPA are calculated at $250 for each workday during which the violations occurred, "but not to exceed a total of $5,000." NYLL § 198(1-d).

Plaintiffs state that they were not provided wage statements compliant with the WTPA for at least two months before their terminations. (See ECF 3, Compl. ¶ 44; ECF 43, Proposed Findings ¶¶ 38-39.) Violations of the WTPA for two months would exceed the 20 workdays required to impose the $5,000 statutory maximum for each Plaintiff, for a total of $10,000.

---

[10]     I calculated Firestone's accrued PTO days over a 60-day period by dividing 20 PTO days by 365 days and then multiplying the product by 60 days. I calculated the value of the PTO days using Firestone's hourly rate of $105.77. (See ECF 44-1, Firestone Decl. Ex. C, Check Preview.) I multiplied $105.77 per hour by 8 hours and then multiplied the product by Firestone's accrued PTO days to calculate the final value of Firestone's accrued PTO ($2,781.90). The full calculation is: ((20/365) * 60) * ($105.77 * 8).

**IV.    Reasonable Attorneys' Fees and Costs**

Plaintiffs seek attorney fees pursuant to 29 U.S.C. § 2104(a)(6), which allows the Court

to grant reasonable attorneys' fees. An award of fees "lies within the sole and rather broad

discretion of the Court." *Baker v. Urb. Outfitters*, *Inc.*, 431 F. Supp. 2d 351, 357 (S.D.N.Y. 2006).

In exercising that discretion, courts should consider "frivolousness, motivation, objective

unreasonableness (both in the factual and in the legal components of the case) and the need in

particular circumstances to advance considerations of compensation and deterrence." *Zalewski*

*v. Cicero Builder Dev., Inc.,* 754 F.3d 95, 108 (2d Cir. 2014). The Court must assess both the

reasonableness of the hourly rates, the reasonableness of the tasks performed by counsel, and

the reasonableness of the amount of time spent on those tasks. *See 1199 SEIU,* 2013 WL

6003731, at *6.

    A.    Reasonable Hourly Rate

To determine whether hourly rates for attorney fees are reasonable, courts "apply the

prevailing rate within the district for similar services by lawyers of comparable experience and

skill." *Solis v. 53rd St. Partners LLC*, No. 19-CV-11708 (PGG) (SLC), 2021 WL 9667808, at *14

(S.D.N.Y. Jan. 15, 2021), *report and recommendation adopted*, 2022 WL 12399506 (S.D.N.Y. Oct.

21, 2022). Here, the appropriate comparators are wage-and-hour attorneys practicing in this

District. Courts in this District of New York award experienced wage-and-hour attorneys

between $300 and $400 per hour. *See id.* Hourly rates for paralegals are typically between $100

to $150. *See id.* at *15.

The records submitted by Plaintiffs' attorneys indicate that four attorneys and four

additional individuals (possibly paralegals from the types of work they performed) worked on

this case, including the two founding partners of the firm, Jack Raisner and Rene S. Roupinian, one of counsel, Gail C. Lin, and one associate, Isaac Raisner. Mr. Jack Raisner and Ms. Roupinian each have nearly two decades of experience with WARN Act litigations and had an hourly rate of $1,200. (*See* ECF 44, Decl. of Jack A. Raisner ("Raiser Decl.") ¶¶ 6-7, 10.) Ms. Lin has more than 15 years of experience with WARN Act litigations and had an hourly rate of $875. (*See id.*) Mr. Issac Raisner has prior experience in litigating employee rights claims and had an hourly rate of $725. (*See id*.)

These hourly rates exceed the rates awarded to wage-and-hour lawyers in this District. *See, e.g., Campos Marin v. J&B 693 Corp.,* No. 19-CV-0569 (JGK) (KHP), 2022 WL 377974, at *11-12 (S.D.N.Y. Jan. 21, 2022) (holding that reasonable hourly rates were $400 for a partner with almost forty years of employment law experience and $300 for an associate with nine years of employment law experience), *report and recommendation adopted*, 2022 WL 374522 (S.D.N.Y. Feb. 7, 2022); *Williams v. Epic Sec. Corp.,* 368 F. Supp. 3d 651, 658-59 (S.D.N.Y. 2019) (holding that reasonable hourly rates were $600 for a partner with thirty-two years' experience in wage-and-hour cases and $350 for a partner with four years' experience in wage-and-hour cases and seven years' experience in criminal defense).

The four other staff members who performed paralegal-type work had hourly rates ranging from $125 to $425, which rates also exceed the rates awarded for paralegal work in wage-and-hour cases in this District. *See Campos Marin,* 2022 WL 377974, at *12 (awarding $100 per hour for a paralegal); *Williams v. Metro-N. R.R. Co.,* No. 17-CV-3847 (JGK), 2018 WL 3370678, at *8 (S.D.N.Y. June 28, 2018) (determining that $100 to $150 are reasonable hourly rates for paralegal services), *report and recommendation adopted,* 2018 WL 3368713 (S.D.N.Y.

July 10, 2018). I therefore respectfully recommend reducing the hourly rates of Mr. Jack Raisner and Ms. Roupinian to $600; reducing the hourly rate of Ms. Lin to $400; reducing the hourly rate of Mr. Isaac Raisner to $250; reducing the hourly rate of three of the individuals performing paralegal-level work to $100; and reducing the hourly rate of the final person performing paralegal-level work (Ms. Hoxha) to $150.

      B.    <u>Reasonable Hours Spent on the Matter</u>

The attorneys seeking fees must show "contemporaneous time records that show for each attorney, the date, the hours expended, and the nature of the work done." *1199 SEIU*, 2013 WL 6003731, at *8. The time records are necessary to allow the Court to evaluate the reasonableness of the tasks performed by counsel and the reasonableness of the time spent on those tasks. *See N.Y. Dist. Council of Carpenters Pension Fund v. Perimeter Interiors, Inc.,* 657 F. Supp. 2d 410, 424 (S.D.N.Y. 2009) (holding that a court should evaluate the amount of time spent on tasks and rely on its own familiarity with the case to determine reasonableness). Courts may disallow time spent on unreasonable tasks as well as excessive time spent on reasonable tasks. *See Tlacoapa v. Carregal,* 386 F. Supp. 2d 362, 371-72 (S.D.N.Y. 2005) (excluding excessive and unreasonable hours from the computation of attorneys' fees). The Court also has the discretion "simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Assif v. Titleserv, Inc.*, No. 11-CV-3203 (PKC) (AKT), 2015 WL 13753144, at *15 (E.D.N.Y. Aug. 14, 2015). In assessing the amount of time spent on litigation-related tasks, courts will consider whether the case was complex or simple. *See 1199 SEIU*, 2013 WL 6003731, at *8.

The billing records reflect that Plaintiffs' counsel spent time on unnecessary tasks. For example, on an almost weekly basis, all or nearly all members of the team working on this matter spent time reporting on the case to the firm or in strategy sessions: there were over forty meetings between March 15 and November 25, 2024. (*See* ECF 44, Raisner Decl. Ex. A, Billing Records at 6-21.) Such time should not be fully compensated. *See Tlacoapa,* 385 F. Supp. 2d at 373 (finding that the fee request should be reduced by 35 percent where the full amount included fees for internal conferences among the plaintiff's attorneys).

Plaintiffs' counsel spent a significant amount of time reviewing payroll data of the terminated employees. (*See* ECF 44, Raisner Decl. ¶ 10; *id.* Ex. A, Billing Records.) However, this work was ultimately unnecessary, since Plaintiffs abandoned their effort to pursue this case as a class action. *See Cooper v. Sunshine Recoveries, Inc.*, No. 00-CV-8898 (LTS) (JCF), 2001 WL 740765, at *3 (S.D.N.Y. June 17, 2001) (holding that compensation for class action related work can be appropriately denied if counsel abandoned all class claims).

Plaintiffs' counsel billed nearly 250 hours on this matter. (*See* ECF 44, Raisner Decl. ¶ 10.) Yet Defendants defaulted before answering, so the necessary work by Plaintiffs' counsel was limited to preparing, filing, and serving the Complaint and preparing, filing, and serving the default judgment papers. In other WARN Act and similar labor law cases in this District, the Court has approved between 17 and 40 hours for similar tasks. *See 1199 SEIU,* 2013 WL 6003731, at *8 (finding 29.1 hours of time was reasonable in a default judgment WARN Act case); *Rodriguez v. Heinchon Marcus Distribs., LLC,* No. 16-CV-1447 (VB) (PED), 2016 WL 7489067, at *9 (S.D.N.Y. Nov. 10, 2016) (finding 39.4 hours was reasonable in a default judgment FLSA case), *report and recommendation adopted*, 2016 WL 7477559 (S.D.N.Y. Dec. 28,

2016); *Palacios v. Z&G Distribs., Inc.,* No. 11-CV-2538 (AT) (FM), 2013 WL 4007590, at *6

(S.D.N.Y. Aug. 6, 2013) (finding 17.8 hours was reasonable in a default judgment FLSA case),

*report and recommendation adopted*, 2013 U.S. Dist. LEXIS 130676 (S.D.N.Y. Sept. 11, 2013); *cf.*

*Assif,* 2015 WL 13753144, at *16 (approving as reasonable 213.75 hours in a class action WARN

Act case where the court ordered that the inquest into damages following the defendants'

default be deferred until after class discovery was completed). I respectfully recommend

cutting the hours spent on this case by 75% to reflect the amount of time typically approved by

this Court in similar matters for similar amounts of work.

I set forth below a chart summarizing the attorneys' fees requested by Plaintiffs along

with my recommended adjustments to the hourly rates and time billed. My proposed

reductions to the rates and hours lead to a recommended award of $15,657.25 for reasonable

attorneys' fees.

| Name | Position | Billed Hourly Rate | Recommended Reduced Hourly Rate | Hours Billed | Recommended Reduced Hours (Hours Billed x .25) | Requested Fees (Billed Hourly Rate x Hours Billed) | Recommended Award of Fees (Reduced Hours x Reduced Hourly Rate) |
|---|---|---|---|---|---|---|---|
| Kai S. Chung | Unknown | $125 | $100 | .8 | .2 | $100.00 | $20.00 |
| Christian A. Morales | Unknown | $125 | $100 | 29.4 | 7.35 | $3,675.00 | $735.00 |
| David K. Goldstein | Unknown | $310 | $100 | 15.3 | 3.825 | $4,743.00 | $382.50 |
| Jenny X. Hoxha | Unknown | $425 | $150 | 71.06 | 17.765 | $30,200.50 | $2,664.75 |
| Isaac A. Raisner | Associate | $725 | $250 | 6.4 | 1.6 | $4,640.00 | $400.00 |
| Gail C. Lin | Of Counsel | $875 | $400 | 81.2 | 20.3 | $71,050.00 | $8,120.00 |
| Jack A. Raisner | Partner | $1200 | $600 | 33.2 | 8.3 | $39,840.00 | $4,980.00 |
| Rene S. Roupinian | Partner | $1200 | $600 | 9.5 | 2.375 | $11,400.00 | $1,425.00 |
| **TOTAL** | | | | 246.86 | 61.715 | $165,648.50 | **$18,727.25** |

C.    Reasonable Costs

Plaintiffs claim total costs of $2,574.07, which includes filing fees of $810, process server fees of $1,625, and miscellaneous fees (postage, printing, and PACER) of $139.07. (*See* ECF 43, Proposed Findings ¶ 42.) Courts permit attorneys to recover "reasonable out-of-pocket expenses." *See 1199 SEIU*, 2013 WL 6003731, at *8. I find the costs sought by Plaintiffs to be the type for which attorneys are typically permitted to recover and therefore to be reasonable.

## CONCLUSION

For the reasons set forth above, I respectfully recommend that the motion for a default judgment be granted and that judgment be entered against Defendants in favor of Plaintiffs in the amount of $82,400.42, consisting of:

1. $64,975.50 in WARN Act damages ($38,320.62 for Firestone and $26,654.88 for Bielefeldt).

2. $18,727.25 in reasonable attorneys' fees; and

3. $2,574.07 in costs.

DATED:    October 22, 2025
          New York, New York

Respectfully Submitted,

**ROBYN F. TARNOFSKY**
**United States Magistrate Judge**

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO REPORT AND RECOMMENDATION

The parties shall have fourteen days (including weekends and holidays) from service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure to this report and recommendation. Plaintiffs shall promptly serve a copy of this report and recommendation on Defendant by mail and email at Defendant's last known addresses and shall file proof of such service on the docket

on the day such service is made. A party may respond to another party's objections within fourteen days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any objections by Plaintiffs shall be served on Defendants on the same day the objections are filed with the Clerk of Court, with proof of service to be filed on the docket within two business days. Any requests for an extension of time for filing objections must be addressed to Judge Koeltl.

THE FAILURE TO OBJECT WITHIN FOURTEEN DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).